Al PODLESNICK, Plaintiff,

v.

AIRBORNE EXPRESS, INC., Defendant.

No. C-3-81-453.

United States District Court,
S.D. Ohio, W.D.

Sept. 9, 1982.

Ralph Skilken, Jr., Dayton, Ohio, for plaintiff.

Theodore R. Hoy, Dayton, Ohio, Roger K. Quillen, Atlanta, Ga., for defendant.

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT; TRIAL DATE AND OTHER DATES SET FORTH IN DOCKET # 36 AFFIRMED

RICE, District Judge.

Pursuant to this Court's decision and entry of April 21, 1982, 94 F.R.D. 288, which

sustained Plaintiff's motion to file an amended complaint, said complaint was filed on April 22, 1982. Defendant moved (doc. # 20) to dismiss the complaint, or, alternatively, for summary judgment, and has filed numerous memoranda in support of said motion (doc. # # 21, 23, 24, 31, 32, 34). Plaintiff has also filed several memoranda and other materials in response to the motion (doc. # # 22, 25–27, 33, 35). The Court notes that it is considering the numerous reply memoranda, even though most of same were untimely filed, S.D. Ohio R. 4.0.2. While acknowledging that the case is a relatively close one, the Court finds, for the following reasons, that Defendant's motion is not well taken, and same is overruled in its entirety.

The relevant factual background to this matter was set out in the Court's aforementioned decision and entry, and same need not be repeated at great length herein. In his amended complaint, Plaintiff alleges that he was employed by Defendant as an aircraft pilot, and was promoted to the position of "chief pilot" on May 30, 1980, for an interim period. He further alleges that he was summarily dismissed on May 15, 1981, despite an agreement between the parties that he could return to the position of "line pilot." Defendant refused to submit the question of his dismissal to Defendant's System Board of Adjustment. In the First Cause of Action in the amended complaint, Plaintiff alleges that Defendant's refusal violated his right of access to the Board, guaranteed by § 204 of the Railway Labor Act (RLA), 45 U.S.C. § 184. In the Second Cause of Action, Plaintiff alleges that the dismissal was due to his refusal, when asked by Defendant, to discipline pilot employees who were active in union organizing. The discharge for this reason, he concludes, also violates his rights under § 2, third and fourth, of the RLA, 45 U.S.C. § 152, third and fourth. The primary focus of Defendant's motion is that Plaintiff was *not* an "employee or subordinate official" of Defendant, 45 U.S.C. § 181, and thus not entitled to the protection of the RLA. Instead, Defendant contends, the functions and duties of the "chief pilot" position indicate

that it is a *management* job, outside the scope of the Act.

## I. DEFENDANT'S MOTION TO DISMISS IS OVERRULED

■ Initially, Defendant moves to dismiss the amended complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). The basis of the motion is that Plaintiff fails to allege that he is an "employee or subordinate official" subject to the protections of the RLA. In a Rule 12(b)(6) motion, this Court must accept as true all well-pleaded allegations in the complaint, *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976), and such a motion should not be sustained unless it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Neal v. Bergland,* 646 F.2d 1178, 1184 (6th Cir.1981).

■ Based on these standards, the allegations in the amended complaint survive a motion to dismiss. It is true, as Defendant argues, that Plaintiff nowhere specifically alleges that he was an "employee or subordinate official" under the RLA. However, he does allege that he was "employed" by Defendant, Amended Complaint, ¶ 1, and that he is subject to the protections of the RLA, *id.,* ¶ 11. Thus, as the Court suggested in its earlier decision and entry, 94 F.R.D. at 290, when the amended complaint is liberally construed and read as a whole, it indicates with sufficient clarity that Plaintiff was an "employee" (or "subordinate official") seeking the protection of the RLA. For these reasons, Defendant's motion to dismiss is not well taken and same is hereby overruled.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IS OVERRULED

In the alternative, Defendant moves for summary judgment, pursuant to Fed.R. Civ.P. 56. Under Rule 56, Defendant's motion can only be sustained when the movant conclusively demonstrates, based on the pleadings, affidavits, and other material on record, that there exists no genuine issue of material fact, all evidence and inferences

drawn therefrom having been construed in the light most favorable to the party opposing the motion. Fed.R.Civ.P. 56(c); *Board of Education v. Pico,* —— U.S. ——, ——, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982); *Atlas Concrete Pipe, Inc. v. Au & Son, Inc.,* 668 F.2d 905, 908 (6th Cir.1982). With these standards in mind, the Court considers the grounds advanced in support of said motion.

As noted above, with regard to Plaintiff's First Cause of Action, the pertinent provisions of the RLA apply to "every air pilot or other person who performs any work as an employee or subordinate official" of a "carrier", such as Defendant. 45 U.S.C. § 181. Similarly, with regard to Plaintiff's Second Cause of Action, courts have implied a cause of action for employees to enforce the provisions of § 2, third and fourth, of the RLA, 45 U.S.C. § 152, third and fourth. *Adams v. Federal Express Corp.,* 547 F.2d 319, 321 (6th Cir.1976), *cert. denied,* 431 U.S. 915, 97 S.Ct. 2177, 53 L.Ed.2d 225 (1977).

Unfortunately, the terms "employee" or "subordinate official" are not specifically defined in the RLA.[1] Moreover, the Court cannot draw on the considerable body of law developed under the National Labor Relations Act (NLRA), concerning the definition of an "employee", since the NLRA differs in significant respects from the RLA. *Ruby v. American Airlines, Inc.,* 323 F.2d 248, 256 (2d Cir.1963), *cert. denied,* 376 U.S. 913, 84 S.Ct. 658, 11 L.Ed.2d 611 (1964).[2] With respect to air carriers, however, the National Mediation Board (NMB) has sought to define the scope of the terms "employee" or "subordinate official" on an essentially case-by-case basis. *See* footnote one, *supra.*

The parties do not contest the relevancy or accuracy of the criteria developed by the NMB to define the scope of the aforementioned terms. As detailed in Defendant's Memorandum in support of its motion, doc. # 21, pp. 18–28, the NMB has considered the following factors in distinguishing management officials from employees or subordinate officials: the degree of independent discretion in making decisions related to the management function, the responsibility for important work duties, the possession of staff responsibilities, the authority to recommend the hiring, firing, and disciplining of employees, the finality of the person's decisions, and the relative terms and benefits of employment. *See Northwest Airlines, Inc.,* 2 N.M.B. 27, 36–41 (1949); *Pan Am, Inc.,* 4 N.M.B. 90, 92–94 (1965); *Pan Am, Inc.,* 4 N.M.B. 129, 131–39 (1967). *See also, Edwards v. Southern Railway Co.,* 376 F.2d 665, 668–69 (4th Cir. 1967); Lazar, *Airline Employee Coverage Under the Railway Labor Act,* 21 J.Air.L. & Com. 277, 280 (1954).

Relying primarily on the affidavit of A. Michael Kuli, Vice President in charge of operations of Defendant (attached to doc. # 21), which describes Plaintiff's duties as a chief pilot, Defendant argues that applying the above mentioned criteria indicates that Plaintiff was *not* an "employee or subordinate official" when he was discharged. Kuli's affidavit states, *inter alia,* that Plaintiff "was the ultimate authority over all the line pilots," Affidavit, ¶ 3, in that he "directed their training, oversaw their check-rides, and authorized their pay increases [and] had the authority to hire and fire pilots and to dispense pilot discipline up to and including discharge." *Id.* Kuli also

---

1. As originally enacted, the RLA permitted (and still permits) the Interstate Commerce Commission (ICC) to define the work performed by an employee or subordinate official. 45 U.S.C. § 151, fifth. The Act was amended in 1926 to include air carriers. 45 U.S.C. § 181. However, the ICC never undertook to define the aforementioned terms for air carriers. The National Mediation Board began to develop such criteria for air carriers in the late 1940's. *See Northwest Airlines, Inc.,* 2 N.M.B. 19, 25 (1948); Curtin, *The Representation Rights of Employees and Carriers: A Neglected Area Un-*

*der the Railway Labor Act,* 35 J. Air L. & Com. 469, 479 (1969). *See also, Railway Clerks v. Non-contract Employees Assoc.,* 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965).

2. Section 2 of the NLRA defines "employees," 29 U.S.C. § 152(3), but "any individual employed by an employer subject to the Railway Labor Act" is excluded, *id.,* as are "supervisors." 29 U.S.C. § 152(11). The term "subordinate official," while used in the RLA, is not mentioned in the NLRA.

states that Plaintiff "played an essential role in the Company's grievance resolution procedure for the pilots," ¶ 4, was "solely responsible for deciding whether the line pilots were qualified to fly," ¶ 6, was "an integral part of the decision-making management team," ¶ 7, had his own office and full-time secretary, ¶ 8, "received a very substantial pay increase to serve as Chief Pilot," ¶ 9, and had an expense account privilege not shared by the line pilots. ¶ 10. These facts, Defendant concludes, show that the Chief Pilot had the duties and responsibilities of a management official. Defendant also points toward a Federal Aviation Administration (FAA) regulation, 14 C.F.R. § 121.59(a), (1982), which states, *inter alia,* that a "chief pilot" is part of "management personnel."

■ In response, Plaintiff relies primarily on his own affidavit (first attachment to doc. # 22). Said affidavit contradicts or disputes a number of the facts set out in the Kuli affidavit. For example, he states that he "had minimal control over the training of pilots for the company," and that his authority was of a "perfunctory" and "supervisory nature." Affidavit, ¶ 4 (*Cf.* Kuli affidavit, ¶ 3). He also states that he had "no authority to grant a pay increase [or] too hire [or fire] pilots." ¶¶ 5–7 (*Cf.* Kuli affidavit, ¶ 3). He does admit, however, that he was involved in the formal procedure to resolve complaints and to discipline pilots. ¶¶ 8–9 (*Cf.* Kuli affidavit, ¶ 4). Plaintiff goes on to state that he only had a "minimal influence" with respect to deciding whether pilots were qualified to fly or on operations in general. ¶¶ 10–11 (*Cf.* Kuli affidavit, ¶¶ 6–7). Finally, Plaintiff admits that he had his own office, but states that he was not "assigned" a secretary, and that he was not aware of any expense account privilege different from that of a line pilot. ¶¶ 12–13 (*Cf.* Kuli affidavit, ¶¶ 8–10). Plaintiff also contends that the above stated FAA regulation does not purport to define the scope of an "employee or subordinate official" under the RLA, and thus should not be controlling.

Defendant contends that "[p]laintiff's affidavit, at most, raises questions about his perception of the Chief Pilot's authority." Defendant's Reply Memorandum, doc. # 23, p. 11. Even accepting the factual statements in plaintiff's affidavit, Defendant argues that he should *still* be considered a management official. *Id.* at 12–17. In other words, Defendant argues that Plaintiff's affidavit raises no genuine issues of material fact, thus rendering summary judgment (in its favor) appropriate.

Recognizing that Defendant has filed lengthy and well-argued memoranda, the Court nevertheless cannot agree with its position. The Court does not find that accepting the description of Plaintiff's position in his own affidavit would indicate that he is a management official. Moreover, the Court finds that genuine issues of material fact *are* raised when comparing the Rule 56 materials submitted by Plaintiff and Defendant.

At the outset, the Court emphasizes that a person's status under the RLA must turn largely on the facts of each case, and that the rank or title given a position is not necessarily controlling. *Trans World Airlines, Inc.,* 3 N.M.B. 94, 95 (1961); *Edwards v. Southern Railway Co., supra,* 376 F.2d at 669 n. 6. Based on Plaintiff's own description of the position and duties of a Chief Pilot, it is doubtful that he could be considered a management official. As noted above, he emphasized that his duties were largely of a perfunctory nature, and that he had only a minimal influence on management decision making. Standardization of duties, leaving little in the way of discretion, suggests that an employee, rather than management, is performing the job. *Pan Am, Inc., supra,* 4 N.M.B. at 136. Moreover, the RLA's use of the term "subordinate official," *in addition* to the use of "employee," suggests that certain employees performing functions intermediate between those of the typical employee and management official could fall under the scope of the Act. *Northwest Airlines, Inc., supra,* 2 N.M.B. at 41; *Curtin, supra,* at 478–80.

More importantly, a comparison of the Rule 56 materials on record indicates that same do raise genuine issues of material fact.[3] As previously outlined, the Kuli description of a Chief Pilot's duties differs dramatically from that given by Plaintiff. The respective affidavits specifically differ on a number of facts, including whether Plaintiff could authorize pay increases, hire or fire pilots, amend the operations manual, had his own secretary, redesigned his office without approval, or utilized a separate expense account. These disagreements with regard to material facts indicate that summary judgment, in favor of Defendant, is not appropriate at this time.

In reaching this conclusion, the Court notes two factors which it did *not* consider to be of overriding importance. First, the parties agree that Plaintiff flew as a line pilot a number of times while serving as Chief Pilot, but, in several memoranda, they dispute the significance of this fact. Defendant argues that he was *required* to undertake such flights, pursuant to the mandate, in the FAA regulations, that Chief Pilots hold a "current airline transport certificate ...." 14 C.F.R. § 121.-61(b) (1982). *See also,* Affidavits of A. Michael Kuli and Harold L. Neff, attached to doc. # 32. Plaintiff argues that said regulation did *not* require him to fly, but the fact that he *did* fly is indicative of his status as an employee. The Court agrees

with Defendant that this debate is largely "irrelevant," Defendant's Second Rebuttal Memorandum, doc. # 34, p. 2, in that even if a Chief Pilot was *required* to fly, it does not necessarily follow (when considered with all the other disputed facts in the record) that he was not a management official.

Second, Defendant argues that its manual describing the duties of each management official (a manual required to be developed by 14 C.F.R. § 121.59(c)(1) (1982)), a verified copy of which is attached to doc. # 23, shows that a Chief Pilot for Defendant is a management position. Similarly, Defendant has proffered a copy of a recent resume by Plaintiff (attached to doc. # 34), in which Plaintiff apparently tracks the language of the manual in describing his own former position. Once again, the Court notes that the FAA regulation does not purport to define the scope of coverage of the RLA, and that the description of the job in the manual or the resume is simply not *conclusive* on whether that position is that of an "employee or subordinate official." The contents of the manual or resume are not "disputed facts," but they must be read in light of the facts which *are* disputed, and which are outlined earlier in this opinion.

Accordingly, for all of the foregoing reasons, Defendant's motion for summary judgment must be, and is, overruled.[4]

---

**3.** The Court does note that the memoranda also very briefly refer to depositions taken of several (potential) witnesses. Since these depositions were not filed with the Court, they were not considered in ruling upon the motion for summary judgment.

**4.** While the Court overrules Defendant's motion, it does note that, in so ruling, it does not accept two of Plaintiff's arguments.

First, Plaintiff has consistently argued in this litigation that it is an accepted practice among airlines, with collective bargaining agreements, to permit chief pilots to return to the line position—which Defendant herein allegedly failed to do. Plaintiff's Memorandum Contra, # 22, p. 5; second affidavit of Al Podlesnick, attached to doc. # 22. As Defendant observes, this contention, even if true, seems beside the point. At the time in question, Defendant had not entered into a collective bargaining agreement with any union. Moreover, Plaintiff's pri-

or status would appear to be irrelevant to a determination of his status at time of discharge. *Cf. Steelworkers Local No. 1617 v. General Fireproofing Co.,* 464 F.2d 726, 730 (6th Cir.1972) (LMRA case). At best, Plaintiff's contention might be pertinent to an inquiry by the System Board of Adjustment, regarding the merits of his discharge.

Second, Defendant argues that Plaintiff's Second Cause of Action is premised, at least in part, on the contention that even if Plaintiff is deemed a management official, he can assert the representation rights of the line pilot employees. Defendant's Memorandum in Support of Its Motion, doc. # 21, pp. 31–36. Plaintiff apparently does make such an argument. Plaintiff's Memorandum Contra, doc. # 22, pp. 10–11. Based on *Adams v. Federal Express Corp., supra,* this argument (assuming Plaintiff intended to make same) is not well taken. Only "employees or subordinate officials" have

### III.  CONCLUSION

Based on the foregoing reasons, the Court holds that both of Defendant's motions must be, and are, overruled.  The Court emphasizes that it has *not* held that Plaintiff was an "employee or subordinate official" during his tenure as Chief Pilot with Defendant.  The Court only holds that this determination cannot be made by way of summary judgment on the record before the Court, and must await resolution at the trial on the merits.

The trial date and other relevant dates set forth in this Court's Entry of August 13, 1982 (docket # 36) are affirmed in this Entry.

a private, implied cause of action to enforce the provisions of § 2, third and fourth, of the RLA, 45 U.S.C. § 152, third and fourth.