Donald ROBINSON, Richard Hill, Charles M. Adams, James Wolfanger, Karl Rahn, and Ronald Fregara, Plaintiffs,

v.

PAN AMERICAN WORLD AIRWAYS, INC., Defendant.

No. 84 Civ. 4094 (RWS).

United States District Court, S.D. New York.

Nov. 6, 1984.

Bernstein & Arfa, New York City, for plaintiffs; Stephen G. Eisenberg, New York City, of counsel.

Poletti, Freidin, Prashker & Gartner, New York City, for defendant; William E. Malarkey, Catherine J. Minuse, New York City, of counsel.

## OPINION

SWEET, District Judge.

Plaintiffs Donald Robinson, Richard Hill, Charles Adams, James Wolfanger, Karl Rahn, and Ronald Fregara, former employees of defendant Pan American World Airways, Inc. ("Pan Am") brought this action pursuant to the Railway Labor Act, 45 U.S.C. § 151 et seq. (the "R.L.A.") asserting that they were dismissed because of their union organizing efforts in violation of § 2, Fourth of the R.L.A. Pan Am has now moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim and for untimeliness. For the reasons stated below, the motion is granted in part and denied in part.

**Facts**

In 1977, the International Brotherhood of Teamsters, Airline Division, Local 732 ("the Union") filed an application with the National Mediation Board (the "NMB") pursuant to § 2, Ninth of the R.L.A., 45 U.S.C. § 152, Ninth, seeking representation status as to certain Pan Am employees denominated as "Production/Maintenance Supervisors," a group which included both Production Supervisors and Inspection Supervisors as well as other employees. At that time these employees were not represented by any labor organization. Following hearings held in 1978 and 1979, the NMB decided in January of 1980 that Pan Am's Inspection Supervisors were not "employees or subordinate officials" within the meaning of § 1, Fifth of the R.L.A., 45 U.S.C. § 151, Fifth. At the same time, the Board held that Pan Am's Production Supervisors were "employees or subordinate officials" and as such technically constituted a craft or class for representation purposes under the R.L.A. *Pan American World Airways*, 7 N.M.B. No. 95 at 189 (Jan. 18, 1980) (*"Pan Am I"*). However, the NMB declined to allow an election because of the recently consummated merger of Pan Am with National Airlines ("National") and instead authorized the Union to submit a new application later on in 1980 so that the NMB could investigate the impact of the merger on the supervisors.

In December 1980 the Union filed another application pursuant to § 2, Ninth of the R.L.A., 45 U.S.C. § 152 seeking to represent Pan Am's Production Supervisors. Hearings were subsequently held by the NMB between March and October of 1981 in which representatives of both the Union and Pan Am participated. On February 16, 1982, the NMB ruled that Pan Am's Production Supervisors were not "employees or subordinate officials" within the meaning of § 1, Fifth of the R.L.A., 45 U.S.C. § 151, Fifth, citing various changes that had gradually been made in the job after the merger. *Pan American World Airways*, 9 NMB 73 at 229 (Feb. 16, 1982) (*"Pan Am II"*).

Plaintiffs Robinson, Adams, Wolfanger, Rahn and Fregara were Production Supervisors with Pan Am. Plaintiff Hill was an Inspection Supervisor. The plaintiffs allege that during the pendency of the second application and its hearings, in which they participated, they and other Supervisors were threatened, harassed, questioned and intimidated by Pan Am because of their activities in support of the Union. In June of 1981 plaintiffs Robinson, Adams, Wolfanger, Rahn and Fregara were all dismissed from their positions. Hill was dismissed from his position of Inspection Supervisor in February of 1982. Plaintiffs Robinson, Hill, Adams, Wolfanger and Rahn contested their termination in accordance with the terms of Pan Am's personnel manual. Thereafter, grievance hearings

were held before Pan Am's Management Appeal Board. According to the plaintiffs, the Appeal Board has yet to advise them of any decision as to their grievances.

The plaintiffs commenced this action on June 12, 1984 alleging that they were dismissed for their pro-union activities in violation of § 2, Fourth of the R.L.A., 45 U.S.C. § 152, Fourth. In addition, Robinson, Hill, Adams, Wolfanger and Rahn allege as a pendent state claim that Pan Am's Management Appeal Board failed to adhere to time limits established by Pan Am in violation of their employment agreement.

Two separate issues are presented for consideration, either of which could dispose of this case. Pan Am first argues that the plaintiffs were not "employees or subordinate officials" within the meaning of § 1, Fifth of the R.L.A., 45 U.S.C. § 151, Fifth at the time of their dismissal and as such are not entitled to the protections of § 2, Fourth of the R.L.A. Alternatively, Pan Am contends that even if the plaintiffs were "employees or subordinate officials" within the R.L.A. this action is barred by the statute of limitations.

**Applicability of the Railway Labor Act**

Section 2, Fourth of the R.L.A., 45 U.S.C. § 152, Fourth, reads:

*Employees* shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of *employees* shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter. No carrier, its officers, or agents shall deny or in any way question the right of its *employees* to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its *employees*, or to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, or in performing any work therefor, or to influence or coerce *employees* in an ef-

fort to induce them to join or remain or not to join or remain members of any labor organization, or to deduct from the wages of *employees* any dues, fees, assessments, or other contributions payable to labor organizations, or to collect or to assist in the collection of any such dues, fees, assessments, or other contributions: *Provided,* That nothing in this chapter shall be construed to prohibit a carrier from permitting an employee, individually, or local representatives of employees from conferring with management during working hours without loss of time, or to prohibit a carrier from furnishing free transportation to its employees while engaged in the business of a labor organization (emphasis added).

Only "employees" are entitled to the protection of this section. The term "employee" is defined in Section 1, Fifth of the R.L.A., 45 U.S.C. § 151, Fifth:

The term "employee" as used herein includes every person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) who performs any work defined as that of an employee or subordinate official in the orders of the Interstate Commerce Commission now in effect, and as the same may be amended or interpreted by orders hereafter entered by the Commission pursuant to the authority which is conferred upon it to enter orders amending or interpreting such existing orders: *Provided, however,* That no occupational classification made by order of the Interstate Commerce Commission shall be construed to define the crafts according to which railway employees may be organized by their voluntary action, nor shall the jurisdiction or powers of such employee organizations be regarded as in any way limited or defined by the provisions of this chapter or by the orders of the Commission.

When the R.L.A. was amended to include air carriers in 1936, coverage was again limited to those qualifying as an "employee

or subordinate official" within the meaning of section 1, Fifth, 45 U.S.C. §§ 181, 182.

Although the R.L.A. authorizes the Interstate Commerce Commission ("ICC") to define work performed by an employee or subordinate official, 45 U.S.C. § 151, Fifth, the ICC has never undertaken to define these terms for air carriers. *Podlesnick v. Airborne Express,* 550 F.Supp. 906, 908 n. 1 (S.D.Ohio 1982). Instead, the National Mediation Board, which has exclusive jurisdiction over representation matters, *Air Line Pilots Association v. Texas International Airlines,* 656 F.2d 16 (2d Cir.1981), has the jurisdiction and authority to make such a determination. *Northwest Airlines, Inc.,* 2 NMB 19, 25–26 (1948); *Switchmen's Union of North America v. NMB,* 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943). The NMB's determination of whether an individual is an employee or subordinate official within the meaning of the R.L.A. is normally made in the context of a representation dispute. *See e.g., International Association of Machinists & Aerospace Workers, AFL-CIO,* 9 NMB 80 (1982). Because the NMB has exclusive jurisdiction over representation disputes, such determinations are subject to very limited judicial review. *See Brotherhood of Railway and Steamship Clerks v. Employees Ass'n.,* 380 U.S. 650, 668, 85 S.Ct. 1192, 1201, 14 L.Ed.2d 133 (1965).

The issue here presented is whether or not the plaintiffs were "employees or subordinate officials" within the meaning of Section 1, Fifth of the R.L.A. and the nature and effect of an NMB determination as to the status of an employee in the context of a claim brought under § 2, Fourth of the R.L.A. Neither party has presented any authority as to the retroactive or prospective binding effects of NMB rulings, and this court has been unable to find any.

In most cases in which courts have been confronted with claims under this section, there has apparently been no controversy over whether or not the plaintiff employees are entitled to the protections of the Act. *See, e.g., Stephanischen v. Merchants Des-*

*patch Transportation Corporation,* 722 F.2d 922 (1st Cir.1983); *Davin v. Delta Airlines,* 678 F.2d 567, 570 (5th Cir.1982); *Conrad v. Delta Airlines, Inc.,* 494 F.2d 914 (7th Cir.1974); *Scott v. American Airlines, Inc.,* 488 F.Supp. 415 (E.D.N.Y.1980); *Griffin v. Piedmont Aviation, Inc.,* 384 F.Supp. 1070 (N.D.Georgia 1974). In those cases where a plaintiff's status has been at issue, there do not appear to have been any previous NMB rulings in relation to employees of the plaintiff's description, and courts have undertaken independent investigations using NMB criteria to resolve the issue. *See Podlesnick v. Airborne Express, supra,* 550 F.Supp. 906; *Lum v. China Airlines,* 413 F.Supp. 613 (D.Hawaii 1976); *Lundberg v. Chicago Great Western Ry.,* 76 F.Supp. 61 (W.D.Mo.1948). No authority has been cited dealing with the effect of a prior NMB ruling in this context.

Here I conclude that the NMB's 1980 determination as to the status of Inspection Supervisors is controlling. In *Pan Am I,* the NMB decided that Inspection Supervisors were not "employees or subordinate officials" within the meaning of the R.L.A. 7 NMB at 191. This decision represented the NMB's most recent determination of the status of these Supervisors, a determination based on an extensive factual investigation into the nature and responsibilities of the job. The Board gave no indication that the status of these employees would change after the merger, nor did the Union choose to reapply for representation status for these employees on the basis that the position had changed. Plaintiff Hill has not suggested that his position was altered in such a way after the merger that would justify ignoring the NMB's factual determination. Because Hill was not an "employee or subordinate official" within the meaning of the R.L.A. at the time of Pan Am's alleged illegal actions were taken, he is not entitled to claim the protections of § 2, Fourth of the R.L.A. Therefore, Pan Am's motion to dismiss will be granted as to plaintiff Hill.

As to Production Supervisors, however, the NMB has made two separate determinations as to whether Pan Am's Production Supervisors are employees or subordinate officials within the meaning of § 1, Fifth of the R.L.A. In the first decision the NMB ruled that Production Supervisors came within the Act. *Pan Am I*, 7 NMB No. 95 (1980). Two years later, following the merger between Pan Am and National, the Board decided that these supervisors could no longer be considered "employees or subordinate officials" because of various changes that had occurred in the job during the intervening years. *Pan Am II*, 9 NMB 229, 250 (1982). The court has not been asked to review the basis of a decision made by the NMB; neither party contests the validity of either NMB ruling. Instead, the issue is whether one of these two conflicting decisions should determine the plaintiffs' status under the R.L.A. at the time of their dismissals. During the period between the two decisions, all of the plaintiffs were dismissed from their positions.

In bringing this motion, Pan Am argues that the question of whether or not the plaintiffs may claim the protections of the R.L.A. as "employees or subordinate officials" is controlled by the NMB's most recent decision as to the status of employees holding plaintiffs' positions with Pan Am, where the Board concluded that "'Pan Am has, at the present time, invested its Production Supervisors with a level of authority and responsibility which indicates that they can no longer be considered "employees or subordinate officials"' within the meaning of the Railway Labor Act." *Pan Am II*, 9 NMB at 249. In making this determination, the Board did not articulate the precise moment at which the Supervisors ceased being employees within the R.L.A. They noted instead that "[i]t is sufficient for the purposes of this case to note that Pan Am's basic nature has been greatly altered .... The Board must examine Pan Am as it finds it during the relevant time frame. Freezing an inquiry at a particular point in time would not serve the purposes of the Act in an era of dynamic change." 9 NMB at 246–47. Pan Am concedes that the exact moment at which the change in status occurred "probably cannot be determined with absolute precision." (Defendant's Reply Memorandum at 5). It argues, however, that because the Board's decision was based on a hearing record compiled between March and October of 1981 it may be implied that the significant changes had been put into effect prior to the terminations in July of 1981. Therefore, Pan Am contends the 1982 decision should control the question of these Supervisors' status at the time they were dismissed.

The plaintiffs, on the other hand, contend that because the NMB's 1980 determination as to their status was still in effect at the time of the terminations, it should control this decision. They argue that in order to give any meaning to NMB rulings, once the Board makes a determination it must be considered binding upon the affected parties until it is reversed, modified or otherwise superseded. In this case, they contend, the Board did not reverse its prior decision as to the status of Production Supervisors until February of 1982; according to them, the fact that hearings were held before that time should be irrelevant to the binding effect of the NMB's prior ruling during the time between the two decisions.

■ Given the specific factual setting of this case, we decline to find either of the NMB's decisions as to the Production Supervisors binding in the present case. The primary question to be resolved is the factual question of whether or not the Production supervisors were "employees or subordinate officials" within the meaning of the R.L.A. at the time that they were dismissed. The NMB's most recent decision in 1982 only resolves the question of the Production Supervisor's status at that time; the decision does not aid in resolving the question of their status at the time relevant to this case. While it is true that its 1982 decision was based on hearings held during the relevant time period, the positions significantly changed in character over the a two-year period, and evidence was sub-

mitted on this issue on dates which bracketed the date of dismissal. This record presented on this motion fails to establish the date of the change in status.

At the same time, the facts bar the plaintiffs' argument that the 1980 ruling should be prospectively binding as to the Production Supervisors until formally modified. The NMB expressly chose not to give its ruling prospective effect, noting that in the immediate future the status of the Production Supervisors could change significantly. Thus its 1980 decision only involves the question of the Production Supervisor's status at that specific time. Furthermore, the NMB's decision was intended only to determine whether or not an election should be held; it was not intended to establish the parameters within which Pan Am could retaliate against its employees for union activity. In any event, Pan Am's actions during the intervening years may have been influenced by the knowledge that the NMB itself had noted that it expected changes to be made in the job status Supervisor in the immediate future.

Because neither NMB's decision resolves the factual question of whether the Production Supervisors were "employees or subordinate officials" at the time of their dismissal, this court must make as independent determination based on criteria established by the NMB. *Podlesnick v. Airborne Express, supra,* 550 F.Supp. 906; *Lum v. China Airlines, supra,* 413 F.Supp. 613. This is an analysis that cannot be undertaken at this stage of the proceedings. Pan Am's motion to dismiss for failure to state a claim must therefore be denied as to the Production Supervisors.

**Statute of Limitations**

■ Pan Am has also argued that even if the plaintiffs in this case are entitled to the protections of the R.L.A., their cause of action is barred by the statute of limitations. Section 2, Fourth of the R.L.A. does not contain a statute of limitations. The general rule in such a situation is that timeliness should be determined "by reference to the appropriate state statute of limitations." *United Auto Workers v.*

*Hoosier,* 383 U.S. 696, 705, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966). In this situation, the most applicable New York statute is N.Y.C.P.L.R. § 214(2) (McKinney's 1972), which creates a three-year limitations period for actions to recover upon a liability imposed by statute. *See, e.g., Hornblower and Weeks-Hemphill, Noyes v. Burchfield,* 366 F.Supp. 1364 (D.C.N.Y.1973).

Pan Am contends, however, that the exception to this general rule created by the Supreme Court in *Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983), should apply in this situation. In *Del Costello,* the Court chose to apply the six month statute of limitations for unfair labor practices under § 10(b) of the National Labor Relations Act, *as amended,* 29 U.S.C. § 160(b), rather than the applicable state statute, to a "hybrid § 301/fair representation claim" against employers and unions for breach of contract and breach of the duty of fair representation. The Court noted that "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial law making we have not hesitated to turn away from state law." *Id.* 103 S.Ct. at 2294. Because of "[t]he importance of uniformity in the labor law field" and the "family resemblance" between an unfair labor practice and a breach of the duty of fair representation, *id.* 103 S.Ct. at 2293, the Court decided that the six month period established by § 10(b) of the NLRA should be applied in hybrid § 301/fair representation cases.

Pan Am argues convincingly that the "family resemblance" between claims brought under section two, Fourth of the R.L.A. and the NLRA is even stronger than that in *Del Costello,* since violations of Section 2, Fourth are very closely akin to unfair labor practices. However, this resemblance in itself is not sufficient to bring this case within the reasoning of *Del Costello.* The court's principal motivation

in applying the six month period was that the applicable state statute was one governing an action to vacate an arbitration award in a commercial setting, and "state arbitration statutes typically provide very short times in which to sue for vacation of arbitration awards ...." *Id.* 103 S.Ct. at 2291. Because hybrid § 301/fair representation suits involve those difficult situations where an employee is challenging not only his employer's actions but also his union's representation, and the employee is therefore often without adequate representation, the Court held that a very short limitations period would "fail to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights under § 301 and the fair representation doctrine." *Id.* Since the applicable state statute would conflict with important federal policies, the Court decided to apply the longer limitations period provided by the analagous NLRA statute.

In this case, the court is not confronted with a state statute that conflicts with federal policy or interferes with the "practicalities of litigation." Applying a three year limitations period would prejudice neither the employee nor the employer. While uniformity may be an important goal in the labor field, and while § 10(b) may provide a close analogy to these type of R.L.A. cases, Congress chose not to impose a uniform federal statute of limitations to cases arising under Section 2, Fourth of the R.L.A. The Court in *Del Costello* expressly noted that its decision was not intended to require the imposition of a uniform statute in labor cases:

> We stress that our holding today should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere. We do not mean to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy.

*Id.* 103 S.Ct. at 2294. Where, as here, a state's limitation period does not conflict with relevant federal policy, there is no reason to deviate from the general policy

of applying the applicable state statute of limitation.

For the foregoing reasons, Pan Am's motion to dismiss for failure to state a claim and for untimeliness is denied as to plaintiffs Robinson, Adams, Wolfanger, Rahn, and Fregara; Pan Am's motion to dismiss for failure to state a claim is granted as to plaintiff Hill.

IT IS SO ORDERED.