Donald ROBINSON, et al., Plaintiffs,

v.

PAN AMERICAN WORLD AIRWAYS, INC., Defendant.

No. 84 Civ. 4094 (RWS).

United States District Court, S.D. New York.

Sept. 16, 1986.

Herbert K. Lippman, New York City, for plaintiffs.

Pan Am Legal Department, by Richard Schoolman, Andrew M. Upton, Patricia J. Langer, New York City, of counsel, for defendant.

## OPINION

SWEET, District Judge.

Defendant Pan American World Airways, Inc. ("Pan Am") has moved for summary judgment pursuant to Rule 56, Fed.R. Civ.P. dismissing the complaint of plaintiffs Donald Robinson, Charles Adams, James Wolfanger, Karl Rahn and Ronald Fregara[1] (hereinafter "Plaintiffs") on the grounds that their complaint is barred by the statute of limitations on their Railway Labor Act ("RLA") claim, 42 U.S.C. § 151 *et seq.* Plaintiffs contend that Pan Am should be equitably estopped from raising the limitations bar because of Pan Am's continuous delays in concluding the inter-

nal grievance proceedings and continuous assurances of a settlement of the dispute. For the reasons set forth below, Pan Am's motion for summary judgment is denied, and summary judgment for plaintiff is granted on the statute of limitations issue.

**Prior Proceedings**

Plaintiffs filed this action on June 12, 1984 alleging that they had been dismissed from their positions as "production foreman" in retaliation for their support of a labor organization's attempt to organize this employee group, allegedly in violation of Section 2, Fourth of the Railway Labor Act, 45 U.S.C. § 152 Fourth. In opinions reported at 606 F.Supp. 279 (S.D.N.Y.1985) and 597 F.Supp. 1063 (S.D.N.Y.1984) this court denied, both initially and on reargument, Pan Am's motion to dismiss the complaint as untimely, rejecting Pan Am's contention that the six month statute of limitations contained in section 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b) should be applied to suits alleging discharge for pro-union activities under the RLA.

Upon interlocutory appeal pursuant to 28 U.S.C. § 1292(b) the Second Circuit reversed this determination, *Robinson v. Pan American World Airways,* 777 F.2d 84 (2d Cir.1985) holding that the use of the six-month limitations period in the NLRA was applicable in light of the Supreme Court's opinion in *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 79 L.Ed.2d 476 (1983). The court remanded the action to this court to determine whether plaintiffs could equitably estop Pan Am from raising the limitations defense using the equitable tolling standards set out in *Smith v. American President Lines, Ltd.,* 571 F.2d 102 (2d Cir.1978).

**Facts**

Familiarity with the facts set out in the prior opinions of the court, *supra,* is as-

---

**1.** Ronald Fregara, a plaintiff in this action, has notified Robert P. Sheils, former administrator, of his intention to discontinue this court action. By letter of June 27, 1986, Fregara wrote, "I would like you to consider this letter as formal notice that I am dropping my appeal and will seek no further action against Pan Am." As counsel for plaintiffs has not contested Pan Am's representations in this regard, the action is dismissed as to Fregara.

sumed, however, a brief outline of the limitations issue is required. Plaintiffs were dismissed from their positions as Pan Am production foremen on July 15, 1981 and filed management grievances pursuant to section 325 of the Personnel Policy Manual, alleging that their termination was in retaliation for their support of the International Brotherhood of Teamsters ("IBT") drive to represent production foremen which was then pending before the National Mediation Board.

Section 325 of the Pan Am Personnel Policy Manual then in effect "establishes an appeal mechanism for use by management and exempt clerical employees who believe disciplinary action was unjustly or unfairly administered, company policy was improperly interpreted or applied, or unjust treatment was otherwise imposed." The procedure outlined provided for a Management Appeals Board to prepare and sign a decision within thirty calendar days of the grievance hearing, send this to the Vice President of Personnel for review, and return it to the grievant within approximately seven calendar days. The introductory section of the Manual qualified its provisions with the following language:

> The policies described here are not conditions of employment, and the language is not intended to create a contract between Pan Am and its employees ... The Company retains the right to change, modify, suspend, or cancel in whole or in part any of the published personnel policies of the Company at any time and without advance notice except when a notice period is specifically provided for in a particular policy.

The Plaintiffs contacted Mr. Norman Marsich ("Marsich"), IBT Local 732 Business Representative and Mr. William F. Genoese ("Genoese"), Director of the IBT Airlines Division, to represent them in and monitor the progress of the grievance proceedings. However, no ruling was ever made by the appeals board on these grievances. *Robinson v. Pan American World Airways, supra,* 777 F.2d at 89. Marsich and Genoese regularly contacted several

Pan Am officials concerning the undecided grievance hearing results and the possible reinstatement of the Plaintiffs, including Mr. C. Edward Acker, Chairman of Pan Am, Martin R. Shugrue, Senior Vice-President for Personnel Administration, and Robert Sheils, Labor Relations Administrator. The Plaintiffs' opposition papers annex over a dozen letters and mailgrams concerning these foremen beginning on October 31, 1981 with a letter from Genoese to Acker, and ending with a letter from C. Raymond Grebey, Jr., Senior Vice-President of Industrial Relations on July 19, 1984, including a telex from Acker to Genoese dated July 12, 1983 acknowledging a meeting set for July 14, 1983 to discuss the termination and grievance issues.

### Discussion

### Robinson, Adams, Wolfanger and Rahn

Pan Am contends that the Plaintiffs filing of a grievance pursuant to the "Pan American Personnel Policy Manual" ("PPM") did not toll the six-month statute of limitations on their RLA claim, and that Pan Am should not be equitably estopped from invoking the time limitation on these claims because any reliance on the unfinished grievance proceedings was unreasonable as a matter of law.

The parties face a high hurdle as they seek to dispose of the statute of limitations issue by summary judgment. A motion for summary judgment may not be granted "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail upon any circumstances." *Heyman v. Commerce and Industry Ins. Co.,* 524 F.2d 1317, 1319–1320 (2d Cir.1975). The Second Circuit applies these rules strictly, *Rodrigues v. Village of Larchmont,* 608 F.Supp. 467, 471 (S.D.N.Y.1985), reserving summary judgment for cases which present no genuine disputed issues of material fact. This strict standard is applied in recognition of the fact that summary judgment deprives the non-moving party of the opportunity for a full factual development of the record through trial,

*see Jaroslawicz v. Seedman,* 528 F.2d 727, 731 (2d Cir.1975), and the severity of its consequences requires the district courts to resolve all reasonable inferences in favor of the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) *(per curiam ); United States v. One Tintoretto Painting Entitled "The Holy Family with Saint Catherine and Honored Donor",* 691 F.2d 603, 606 (2d Cir.1982).

■ Pan Am correctly asserts that the filing of an internal management grievance in connection with a violation of federal labor laws or analagous civil rights statutes does not, in and of itself, toll the statute of limitations on such claims. As the Supreme Court stated in *Delaware State College v. Ricks,* "[w]e already have held that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods," 449 U.S. 250, 261, 101 S.Ct. 498, 505, 66 L.Ed.2d 431 (1980) *citing Electrical Workers v. Robbins & Myers, Inc.,* 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976). As Pan Am concedes, however, the courts of this circuit have recognized an equitable exception to this general principle for instances in which an employer has pursued a course of conduct which improperly lulled an employee into failing to file a timely court action. *Smith v. American President Lines, Ltd., supra,* 571 F.2d at 109–11; *Miller v. Int'l Telephone and Telegraph,* 755 F.2d 20 (2d Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985).

As with many equitable common law doctrines, the equitable estoppel defense to a limitations period has an inherent tendency to overflow its banks. However, the Second Circuit has provided recent guidance on its confines. In *Dillman v. Combustion Engineering, Inc.,* 784 F.2d 57 (2d Cir.1986) the court in the context of a claim brought under the Age Discrimination in Employment Act, 29 U.S.C. § 621–634 (1982) explained:

"Unlike equitable tolling, which is invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment, equitable estoppel is invoked where plaintiff knew of the existence of his cause of action, but the defendant's conduct caused him to delay bringing his lawsuit ... The doctrine properly may be invoked in a case in which the employer has misrepresented the length of the limitations period or in some other way has "lulled" the plaintiff into believing that it was not necessary for him to commence litigation."

*Id.* at 61, *citing Cerbone v. International Ladies' Garment Workers Union,* 768 F.2d 45, 48 (2d Cir.1985). In *Cerbone, supra,* the court elaborated on the requirements for invoking equitable estoppel:

One factor that frequently appears in the estoppel cases is a settlement negotiation. Thus, where the defendant assures the plaintiff that he intends to settle, and the plaintiff in reasonable reliance on that assurance, delays bringing his suit until after the limitations period has run, the defendant may be estopped to rely on the limitations defense.

*Id.* at 50 (citations omitted).

■ The Second Circuit has repeatedly upheld the district court's determination of equitable estoppel issues through the summary judgment mechanism, *see, e.g., Dillman v. Combustion Engineering, Inc., supra,* 784 F.2d 57; *Cerbone v. International Ladies Garment Workers' Union, supra,* 768 F.2d 45, and summary disposition of the limitations issue is particularly appropriate here, where all of the available and undisputed evidence on the issue is before the court in affidavit and exhibit form. Plaintiffs have submitted sufficient documentary evidence [2] to support the con-

---

**2.** Plaintiffs pleadings are deficient, as they have failed to submit a Local Rule 3(g) statement setting out the material issues of disputed facts and have failed to supply the court with a memorandum of law in opposition to Pan Am's mo-

tion, in violation of local rule 3(b). However, even if the Plaintiffs are deemed to have admitted the facts contained in Pan Am's Local Rule 3(g) statement, *see Dusanenko v. Maloney,* 726

clusion that Pan Am is, as a matter of law, equitably estopped from raising this statute of limitations defense.

First, Pan Am has documented a series of letters and mailgrams among Genoese and Marsich and several Pan Am representatives concerning the possible reinstatement of the dismissed foremen. This correspondence began on October 31, 1981 and continued until July 19, 1984, over one month after the complaint in this action was filed. Plaintiffs have produced thirteen letters and mailgrams written by Genoese and Marsich addressed to Pan Am Chairman Acker complaining about the unresolved foremen's grievances, the failure of the grievance board to render a decision and Pan Am's postponement of meetings scheduled to address these and other teamster issues. Pan Am's management consistently responded to these complaints with indications that reinstatement remained an issue for discussion with the personnel officers, and that a decision on the grievances would be forthcoming.

For example, in response to several such mailgrams from Genoese, Chairman Acker responded in a mailgram of June 22, 1983 that the subject labeled by Genoese "Terminated Foremen Grievances" would be properly discussed at a June 24, 1983 meeting. A similar mailgram from Acker on July 12, 1983 indicated that Genoese's subject headings "No Grievances Settled" and "PA Foreman—Return Them To Their Jobs With Full Pay" were proper subject matter for a meeting set for July 14, 1983. Pan Am has failed to produce a single document which recites an unwillingness to negotiate over possible reinstatement, or a decision not to issue the grievance board findings. Indeed, in his letter of September 13, 1983, Acker granted Genoese's request for Norman Marsich to review the foremen's records with Mr. Bob Adams, a Pan Am personnel department employee.

In addition, according to Genoese and Marsich, Pan Am's actions with respect to two other discharged foremen, "Virgil" Schroeder and "John" Sabernowski also contributed to Plaintiffs' belief that Pan Am intended to settle their grievances internally. Although Plaintiffs' counsel provided only the barest information concerning these employees, it appears that John Sabernowski was reinstated after he retained counsel, and Virgil Schroeder, an employee of Pan Am in California, was reinstated by the management grievance appeals board where he was represented by Marsich.

The content of the final July 19, 1984 letter written from C. Raymond Grebey, Jr. to Genoese indicates that Pan Am concurred in the view that it was still actively considering the outcome of the Plaintiffs' grievance proceeding, and only terminated negotiations on the subject of reinstatement because the plaintiffs filed this action:

> Your mailgram of July 7, 1984 "subject: Terminated Foremen's grievances," was received by Mr. Acker on July 10, and, as you might expect, was referred to me for reply.
>
> As I mentioned to you in my memo of June 22, work was proceeding per our understanding with you or a response to the foremen issue.
>
> This work was, with your agreement, being done by Art Flanagan and, as you know, we were close to a point of final discussion. However, the legal action taken by individuals involved does not make further discussion appropriate at this time ...

This letter, viewed in the context of almost three years of negotiation concerning the possible reinstatement of the dismissed foremen and the reinstatement of similarly situated foremen demonstrates the reasonableness of Plaintiffs' reliance on Pan Am's continued cooperation and discussion concerning their reinstatement to foremen positions and warrants the conclusion that Pan Am should be equitably estopped from relying on a statute of limitations defense in this action.

F.2d 82, 84 (2d Cir.1984), such admissions do not effect Plaintiffs equitable estoppel claims.

Pan Am contends that even if these foremen are permitted to assert an equitable estoppel defense to the limitations period because of the unresolved grievance proceedings, such reliance could not be reasonable after August, 1982 when more than thirty-seven days had elapsed since the management grievance hearing had been held and an answer was due. However, both the attached correspondence and the Genoese and Marsich affidavits attest to continuing oral and written assurances that the grievance issues were still under management consideration long after August, 1982. (*See* Marsich Affidavit, Exhibit B, Sept. 23, 1983 letter).

Pan Am also asserts that the Second Circuit's opinion in *Miller v. Int'l Tel & Tel, supra,* 755 F.2d at 20 holds that only a promise of reinstatement can be used to equitably estop the employer from raising a statute of limitations bar, and Pan Am never made an explicit reinstatement promise. A careful reading of the Second Circuit's view on this issue, however, indicates that although equitable estoppel claims frequently rest on false promises of reinstatement, these are not prerequisites for such a defense to the limitations bar:

> One factor that frequently appears in the estoppel cases is a settlement negotiation. Thus, where the defendant assures the plaintiff that he intends to settle and the plaintiff, in reasonable reliance on that assurance, delays in bringing his suit reasonable reliance on that assurance, delays in bringing his suit until after the statute has run, the defendant may be estopped to rely on the limitations defense.

*Cerbone v. Intern. Ladies' Garment Workers Union, supra,* 768 F.2d at 50 (citations omitted), *see also Dillman v. Combustion Engraving, Inc., supra,* 784 F.2d at 60–61. *Miller v. Int'l Tel & Tel, supra,* 755 F.2d 20 does not indicate otherwise, as it reiterates the Supreme Court's conclusion in *Delaware State College v. Ricks, supra,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 that "the mere possibility that the decision might be reversed was not enough to label it advisory or ineffective

for time bar purposes" *id.* at 24, in the context of Miller's assertion that his notice of his termination and removal from the payroll at a later date was not "advisory" for determining the limitations period. The opinion did not purport to address a situation in which the employer was accused of activity fostering the notion that internal settlement negotiations were still underway after termination. *Id.* at 26 ("There is no evidence that he was misled or prevented from filing a timely claim with the EEOC"). Therefore, the Second Circuit's subsequent opinions in *Cerbone, supra,* and *Dillman, supra,* shed more light on the nature of the equitable estoppel doctrine in the context of alleged employer misrepresentations. Because Plaintiffs here have presented evidence of continued oral and written assurances from Pan Am management that the grievances would be settled internally and evidence that similarly situated employees were reinstated, all in the context of grievance hearings which were technically open and without a decision, Plaintiffs have raised the possibility that their "failure to file in timely fashion is the consequence ... of ... actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." *Price v. Litton Business Systems, Inc.,* 694 F.2d 963 (4th Cir.1982), *cited in O'Malley v. GTE Service Corporation,* 758 F.2d 818 (2d Cir. 1985).

No dispute exists as to Pan Am's letter responses to Genoese and Marsich's demands for a resolution of the foremen issue, and plaintiffs have produced sufficient evidence of Pan Am's continuous attempt to lull the plaintiffs' IBT representatives into the mistaken belief that the company intended to rule on the grievances or negotiate a reinstatement of the foremen. Under these circumstances, Pan Am will not be permitted to invoke the statute of limitations defense and summary judgment on the issue is granted in plaintiffs' favor.

IT IS SO ORDERED.