755 F.2d 20
 37 Fair Empl.Prac.Cas. 8, 36 Empl. Prac. Dec.
P 34,996
Loren B. MILLER, individually and on behalf of all other
persons similarly situated, Plaintiff-Appellant,
v.
INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION, Defendant-Appellee.
 No. 308, Docket 84-7452.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 20, 1984.
Decided Feb. 6, 1985.
 
 Loren B. Miller, plaintiff-appellant pro se.
 Daniel R. Solin, New York City (Solin & Breindel, P.C., Russell G. Tisman, New York City, of counsel), for defendant-appellee.
 Before LUMBARD, MANSFIELD and CARDAMONE, Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 Loren B. Miller, an attorney and pro se plaintiff, appeals from an order of the Eastern District of New York, I. Leo Glasser, Judge, granting summary judgment dismissing as time-barred his complaint claiming that he was discharged by International Telephone and Telegraph Corp. (ITT) because of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Secs. 621-34 (1982). We affirm.
 
 
 2
 In June 1977 Miller, who had been employed by ITT as an attorney on its staff for over 10 years, was told by Howard Aibel, ITT's Senior Vice President and General Counsel, that if he did not improve his performance he would need to find a new job. In February 1978 Aibel advised Miller, after the latter had refused to consider a transfer to ITT's corporate division, that he should start looking for a job outside ITT and plan on leaving his present job within 3 to 6 months, although he could stay on the payroll longer if necessary. According to Miller's sworn testimony, on August 28, 1978, Aibel told him that due to a shortage of departmental funds he would, absent exceptional circumstances, be removed from the payroll on April 1, 1979.[1] On December 1, 1978, he was reminded of the April 1 termination date. On March 23, 1979, the proposed termination was approved by the personnel department, on March 30, 1979, Miller was given written notice, and at the end of March he was removed from the payroll.
 
 
 3
 There followed a broad reorganization of ITT operations and personnel, accompanied by other layoffs. On January 25, 1980, more than 300 days after Miller had received oral and written notification from ITT of its decision to terminate his employment, Miller filed a complaint with the Equal Employment Opportunity Commission (EEOC) claiming that he had been discharged in violation of the ADEA. The complaint listed April 1, 1979, as the "Date Most Recent or Continuing Discrimination Took Place," although it also referred to subsequent terminations by ITT of the employment of others. On March 30, 1981, two years after the date when Miller received written notice of his termination, he filed the present action alleging a continuing violation of the ADEA.
 
 
 4
 In pretrial depositions Miller testified that as early as June 1977 or sometime in 1978 he was aware that ITT was discriminating against him because of his age in connection with promotional opportunities and that he became aware that he was being discriminated against in connection with his continued employment by ITT "[a]t or about the time I was terminated." Magistrate Shira Scheindlin, in a thoroughly reasoned opinion, recommended that ITT's motion for summary judgment be granted on the ground that the action was time-barred because of Miller's failure to file his claim with the EEOC within 300 days after receiving notice of termination. In doing so, she rejected his claims that the statute of limitations was tolled and that the violations were continuing ones. Upon review of the issues de novo Judge Glasser granted summary judgment, and he later denied Miller's motion under Fed.R.Civ.P. 59(e) for reconsideration. This appeal followed.
 
 DISCUSSION
 
 5
 Under the ADEA a victim of age discrimination in New York must file his charge with the EEOC within 300 days after the discriminatory action or within 30 days after the end of a state investigation, if earlier.[2] See 29 U.S.C. Secs. 626(d)(2); 633(b). The 300-day period, in the case of a discriminatory discharge, starts running on the date when the employee receives a definite notice of the termination, not upon his discharge. See Chardon v. Fernandez, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (Sec. 1983 suit); Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (Title VII and Sec. 1981 suit); Pauk v. Board of Trustees of City University of New York, 654 F.2d 856, 858-61 (2d Cir.1981) (Sec. 1983 action), cert. denied, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982); Pfister v. Allied Corp., 539 F.Supp. 224, 225-27 (S.D.N.Y.1982) (ADEA); Lutz v. Association Films, Inc., 552 F.Supp. 985 (S.D.N.Y.1982) (ADEA). The notice may be oral. See Aronsen v. Crown Zellerbach, 662 F.2d 584, 594 (9th Cir.1981), cert. denied, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983); see, e.g., Lutz v. Association Films, Inc., supra, 552 F.2d at 986.
 
 
 6
 No action based on a claim of age discrimination may be brought in federal court unless the claim was properly raised with the EEOC, i.e., within the permissible time limit for filing the claim with the EEOC, Reich v. Dow Badische Co., 575 F.2d 363, 367-68 (2d Cir.), cert. denied, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978); Smith v. American President Lines, Ltd., 571 F.2d 102, 107-08 (2d Cir.1978), and within the scope of the EEOC investigation reasonably expected to grow out of that filing, id. at 107 n. 10; Thomas v. Resort Health Related Facility, 539 F.Supp. 630, 642 (E.D.N.Y.1982). Assuming that a claim has been timely filed with the EEOC and that the federal action is within its scope, an action for non-willful discrimination must be brought within two years after the discriminatory action occurred and a claim for willful discrimination within three years of the action, see 29 U.S.C. Sec. 626(e)(1) (1982),[3] but the period is tolled for up to one year for the time during which the EEOC attempts to obtain voluntary compliance with the Act, see 29 U.S.C. Sec. 626(e)(2).
 
 
 7
 The foregoing time periods commence upon the employer's commission of the discriminatory act and are not tolled or delayed pending the employee's realization that the conduct was discriminatory unless the employee was actively misled by his employer, he was prevented in some extraordinary way from exercising his rights, or he asserted his rights in the wrong forum, in which event tolling of the time bar might be permitted as a matter of fairness. Smith v. American President Lines, Ltd., supra, 571 F.2d at 109. An "extraordinary" circumstance permitting tolling of the time bar on equitable grounds might exist if the employee could show that it would have been impossible for a reasonably prudent person to learn that his discharge was discriminatory. Cf. Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924 (5th Cir.1975). Moreover, the rulings in Ricks and Chardon that the time period starts upon the employee's receiving notice of termination are retroactive. The Supreme Court so applied them in those cases. See also Pauk, Lutz, and Pfister, supra.
 
 
 8
 Applying these principles to the present case, Miller testified in his deposition that on August 28, 1978, he received oral notice from Aibel that he would, absent exceptional circumstances, be removed from the payroll on April 1, 1979. This sworn admission, which could not later be contradicted for the purpose of creating an issue of fact, see Perma Research and Development Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir.1969), established that the running of the statute of limitations period was triggered on August 28th. As in Ricks, supra, the mere possibility that the decision might be reversed was not enough to label it advisory or ineffective for time-bar purposes. See, e.g., Coke v. General Adjustment Bureau, Inc., 616 F.2d 785, 788 (5th Cir.1980), vacated on other grounds and reh'g on other grounds, 640 F.2d 584, 586 & n. 2 (5th Cir.1981). Nor was the oral notice, which was given by ITT's Senior Vice President and General Counsel, ineffective because the company's personnel department had not yet officially voted to approve it by August 28th when it was given. ITT's personnel department was aware of Aibel's August 28th action and Miller conceded both that Aibel advised him to consult that department regarding his efforts to find a new job and that he had done so. Miller's 300 days to file with the EEOC therefore expired more than a half a year before he actually filed his January 25, 1980 EEOC complaint, and as a result, he forfeited his right to sue under the Act. Moreover, the two-year statute of limitations for filing a complaint alleging a non-willful violation expired on August 28, 1980, seven months before Miller commenced the present action. Even accepting Miller's contention that the statute of limitations did not begin running until March 30, 1979, when he received official written notice of termination, his action is still barred, since his EEOC filing occurred 301 days after that date.
 
 
 9
 Miller, an experienced lawyer, has never alleged that he was unaware of his rights under the ADEA. However, he argues that since his termination was part of an ITT restructuring program that continued through 1982 the statute of limitations did not commence running as to him during the continuance of that program. We disagree. When employees are hired or refused employment pursuant to a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it, Association Against Discrimination in Employment, Inc. v. City of Bridgeport, 647 F.2d 256, 274 (2d Cir.1981), cert. denied, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982), provided such a continuing violation is clearly asserted both in the EEOC filing and in the complaint. However, a continuing violation may not be based on an employee's having suffered from the effects of an earlier discriminatory act. Ricks, supra, 449 U.S. at 257, 101 S.Ct. at 503; United Air Lines, Inc. v. Evans, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). Thus, several courts have held that an employee who has been discharged pursuant to a discriminatory policy may not take advantage of later discriminatory acts against other employees for the purpose of postponing the running of the statutory period as to him on a continuing violation theory. Williams v. Owens-Illinois, Inc., 665 F.2d 918, 924 (9th Cir.1982), modified on other grounds, 28 F.E.P. 1820 (1982), cert. denied, 459 U.S. 971, 103 S.Ct. 304, 74 L.Ed.2d 283 (1982); Woodburn v. LTV Aerospace Corp., 531 F.2d 750, 751 (5th Cir.1976); Malarkey v. Texaco Inc., 559 F.Supp. 117, 120-21 (S.D.N.Y.1982), aff'd on other grounds, 704 F.2d 674 (2d Cir.1983). We need not resolve that issue in the present case, however, for the reason that Miller did not assert in his EEOC complaint as the basis of his action a continuing violation extending beyond his discharge; on the contrary, he listed "April 1, 1979" as the date of the most recent violation in his signed charge filed with the EEOC. There was therefore no reason for the EEOC to investigate a continuing violation running beyond that date. Since, according to his own filed claim, the conduct that injured him occurred at the time when he was discharged he cannot now allege later terminations of others as a continuing violation as to him, and the existence of terminations post-dating his own would not serve to delay the running of the statutory period as to him. See Woodbury v. LTV Aerospace Corp., supra, 531 F.2d at 751; Schroeder v. Dayton-Hudson Corp., 448 F.Supp. 910, 913 (E.D.Mich.1977), reh'g granted on other grounds, 456 F.Supp. 650 (E.D.Mich.1978).
 
 
 10
 Miller next contends that ITT engaged in a continuing violation as to him by the refusal of its subsidiaries to rehire him at a point within the statutory period. His employment applications to FEC and Sheraton Corporation were made in 1978 and 1979 and a second such application to FEC was made in January 1980, after his termination by ITT and within 300 days of the date he filed his claim with the EEOC. This contention must be rejected because no such claim of failure to rehire was made in Miller's EEOC complaint. See Lawson v. Burlington Indus., Inc., 683 F.2d 862, 863-64 (4th Cir.), cert. denied, 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982) (charge of illegal layoff does not encompass failure to rehire); Reich v. New York Hospital, 513 F.Supp. 854, 859 (S.D.N.Y.1981) (refusal to reinstate is separate claim from dismissal). Absent the filing of such a claim with the EEOC it could not become the basis of the present action. Moreover, since the claims are separable, the new claim of failure to rehire would not in any event delay the running of the time period as to the earlier claim of discriminatory discharge. See Charlier v. S.C. Johnson & Son, Inc., 556 F.2d 761, 765-66 (5th Cir.1977); Lawson v. Burlington Indus., Inc., supra, 683 F.2d at 863-64. There would be no reason for the EEOC to investigate the failure to rehire in connection with the claim of alleged discriminatory discharge unless the former were asserted as part of that claim, which it was not. The purpose of the notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC.
 
 
 11
 Finally we find no basis for an extension of the filing period as to Miller on equitable grounds. See Smith v. American President Lines, Ltd., 571 F.2d 102, 109-11 (2d Cir.1978). He is not an uneducated person unfamiliar with the law but a well-educated lawyer engaged in practice in New York.[4] There is no evidence that he was misled or prevented from filing a timely claim with the EEOC. He testified to his awareness as early as 1977 of ITT age discrimination. The Act's policy against assertion of late claims must therefore be enforced.
 
 
 12
 We find no merit in Miller's claim that Judge Glasser committed error in refusing to vacate a protective order issued by Magistrate Scheindlin in June 1982, which barred disclosure by Miller of personnel files obtained during discovery.
 
 
 13
 The order of the district court is affirmed.
 
 
 
 [1]
 When asked whether Aibel had told him that "only the most exceptional circumstances would call for an extension" of his date of termination, Miller at his deposition acknowledged that "I think that is probably correct." In his affidavit in support of ITT's motion to dismiss, Aibel confirms having made that statement
 
 
 [2]
 In states in which there is no agency authorized to investigate allegations of discrimination, potential plaintiffs must file their charges with the EEOC within 180 days of the alleged unlawful practice. Section 626(d)(1)
 
 
 [3]
 Section 626(e)(1) of the ADEA explicitly adopts the statute of limitation provisions of the Portal-to-Portal Act, 29 U.S.C. Sec. 255(a) (1982)
 
 
 [4]
 See, e.g., Pfister v. Allied Corp., supra, 539 F.Supp. at 227 (noting that plaintiff's claim to equitable tolling is particularly weak since he "is an experienced attorney who may be expected to know of the perils of untimely filing"); cf. also Smith v. American President Lines, Ltd., supra, 571 F.2d at 109-10 (noting, as a reason for rejecting equitable tolling, the fact that plaintiff was represented by counsel at an early stage and "had access to a means of acquiring knowledge of his rights and responsibilities ... well within the 300 day period")