[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 13304
The plaintiff, John McDougall, appeals the decision of the defendant Commission on Human Rights and Opportunities (CHRO) dismissing his complaint of employment discrimination based on age and physical disability by Textron Lycoming.
The plaintiff filed a written complaint with the CHRO on May 19, 1993. A reasonable cause determination was made by the CHRO on September 18, 1995 and a public hearing was held on various dates between February 10, 1997 and March 25, 1997.
The plaintiff was born on October 8, 1939. His employment commenced with Avco Lycoming on March 13, 1967. Initially employed as an accounting clerk, the plaintiff was promoted to cost accounting supervisor and then in 1983 he transferred from accounting to manufacturing and assumed the position of specialist, inventory control system. In the early 1980's Avco merged with Textron and became known as Textron Lycoming. The plaintiff was terminated from Textron on January 8, 1993, three months past his fifty third birthday. At the time of his termination the plaintiff held the position of specialist, inventory control, and was at Labor Grade 30.
On March 15, 1989 the plaintiff was struck by a falling box in the assembly area of his assigned work place. The plaintiff suffered neck and back injuries and was initially absent from work from March 15 to October 22, 1989. Upon his return to work the plaintiff began working two hours a day and was to gradually increase the number of hours worked in a day. However, by December of 1989 the plaintiff, due to continued back and neck pain, ceased working and did not return to Textron until May 13, 1991. In February of 1990 the plaintiff underwent surgery and had a cervical disc removed and replaced with bone from his hip.
The plaintiffs return to work in May of 1991 was medically ordered for only two hours a day with the intent to gradually increase to a full workday. The position of specialist, inventory control system required, at minimum, an eight hour a day, five day a week employee. The plaintiffs return in May of 1991 was as a specialist, inventory control, special assignments. Such assignments consisted of working in the 33-D area in manufacturing to inventory blades. The special assignments given the plaintiff upon his return to Textron were not inconsistent CT Page 13305 with the job description of specialist inventory control and the plaintiff retained his pay and grade level and job title. In addition to a reduced work week and special assignments the plaintiff was also issued a medical parking place, received an orthopedic chair to sit in and given access to a first floor office to accomplish his accounting work. Medical personnel at Textron permitted the plaintiff to schedule therapy treatments during work hours.
The plaintiff testified that he resumed a forty hour work week on July 5, 1991. Payroll vouchers for 1992 indicate that except for the week ending February 16, 1992, the plaintiff never worked a forty hour work week. The plaintiff used a varying combination of accrued sick and vacation days to augment hours actually worked to attain a forty hour workweek.
In October of 1985 Textron hired Mary Jane Spreyer as an Inventory Control Analyst and in 1987 promoted her to Manufacturing Analyst I and subsequently to Manufacturing Analyst II. From Spreyer's hiring in 1985 until March 15, 1989 the plaintiff supervised Spreyer. Spreyer's duties were auxiliary to the plaintiffs duties and more clerical in nature. Once the plaintiff went out on a work related injury in March of 1989 Spreyer's job changed drastically. Spreyer assumed the plaintiffs job because there was no one else to do it. Spreyer, like the plaintiff, reported to Al Thomas. Upon the plaintiffs return to Textron in May of 1991 the plaintiff was told after the first day back he was no longer Spreyer's supervisor. Although Spreyer continued to perform the plaintiffs duties even after the plaintiffs return in May of 1991, she initially was denied any promotion in title or pay and stayed at labor grade 27. Spreyer filed a complaint with the CHRO. Textron settled that claim in 1993 subsequent to the January 1993 termination of the plaintiff.[1]
Mr. Edward Tremblay was named the manager of Final Assembly in March of 1990. Ed Tremblay supervised Al Thomas. In October of 1992, Tremblay was told he would need to prepare for a reduction in workforce within his department. Tremblay first prepared a Reduction in Force Input Data Sheet which indicated what job classifications could be reduced or eliminated. Tremblay eliminated labor Grade 30, inventory control specialist because no one had performed that job at that grade level at least since he became manager of Final Assembly in 1990. The person working a full time work week tracking inventory in and out of final CT Page 13306 assembly, was Spreyer, as a Manufacturing Information Analyst II, at a Labor Grade 27.
Tremblay reduced or eliminated positions not individuals. The Human Resource Department worked with management to ensure that the R.I.F. policy was followed. Tremblay never considered displacing Spreyer with the plaintiff because the plaintiff had never worked anything but light duty; a reduced and inconsistent work week, under Tremblay. As a result of the 1992 R.I.F., eighty two employees were terminated from the manufacturing area at Textron.
 Legal Issues
The respondent, Textron, challenges the timeliness of the plaintiffs written complaint to the CHRO. Textron claims that the one hundred and eighty day filing limit contained in section46a-82(e) of the Connecticut General Statutes began running on October 14, 1992, the day Textron gave the plaintiff written notice of their intent to terminate his employment effective January of 1993.[2] Both the plaintiff and the CHRO contend the controlling date that triggered the running of the one hundred and eighty days was January 8, 1993, the plaintiffs actual termination date.
C.G.S. sec. 46a-82(e) states in part: "Any complaint filed pursuant to this section must be filed within one hundred and eighty days after the alleged act of discrimination. . . ."
(emphasis added). The issue that must be resolved therefore is this: when the only alleged act of discrimination is the decision to terminate does the time for filing a complaint commence with the employee being noticed of his employer's intent to terminate or upon the actual date of termination?
In Williams v. CHRO, 54 Conn. App. 251 (1999), the court determined that the timeliness of filing a complaint is jurisdictional in nature. In reaching such a conclusion theWilliams court reasoned that without strict compliance with the time limits imposed throughout the entire discriminatory complaint procedure the intent of the act, to eliminate unlawful employment discrimination, would not be realized. See AngelseaProductions, Inc. v. CHRO, 236 Conn. 681 (1996).
In Delaware State College v. Ricks, 449 U.S. 250,101 S.Ct. 498 (1980) the court ruled that the alleged act of discrimination CT Page 13307 occurred on the day the employee was informed by the employer that his employment would be terminated at a future date. Id. at 258. The fact that the termination is not an absolute certainty is of no moment to the fact that the time limitation for filing a claim commences at the point of being informed of the decision to terminate. Ricks at 258, Cada v. Baxter Healthcare Corp. ,920 F.2d 446, 450 (7th Cir. 1990), Wall v. NBC, 768 F. Sup. 470, 473,Miller v. International Telephone and Telegraph Corporation,755 F.2d 20, 24 (2d Cir. 1985).
Reliance on federal law to interpret a state statute is not uncommon. Connecticut has previously looked to its federal counterpart when wrestling with how to interpret our state discriminatory employment statutes. State of Connecticut v. CHRO,211 Conn. 464, 469 (1989). The analysis proffered by Ricks and its progeny regarding the time limitations of when an alleged discriminatory claim remains actionable is applicable to the present case. The plaintiff was informed of Textron's decision to terminate his employment on October 14, 1992. That is the only discriminatory act alleged by the plaintiff. He therefore had one and hundred and eighty days from October 14, 1992 to file a claim with the CHRO. His May 19, 1993 filing exceeds the statutorily mandated deadline and the plaintiff is therefore barred from proceeding on the merits of the case.[3]
In the event that this court's interpretation of when the filing deadline passed is incorrect the hearing officer's dismissal of the plaintiffs complaint is nonetheless affirmed.
The scope of review of an agency's decision is very limited. "In determining whether an administrative finding is supported by "substantial evidence' the reviewing court must defer to the agency's assessment of the credibility of witnesses. The determination of issues of fact by the administrative agency should be upheld if the record before the agency affords a substantial basis of fact from which the fact in issue can be reasonably inferred." Mike v. CHRO, 220 Conn. 192, 200 (1991).
The plaintiff in his appeal brief claims that the hearing officer incorrectly applied the McDonnell Douglas Corp. v. Green,411 U.S. 792 (1973) analytical framework to the merits of his case. He claims that the mixed motive analysis articulated inPrice Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775 (1989) should have been used. This court disagrees with the plaintiffs assertion that direct evidence of discrimination was presented to CT Page 13308 the hearing officer. Consequently the McDonnell Douglas model is the correct analysis to apply to the facts of this case.
 "We have recently elaborated on the analysis that we undertake to determine whether a complainant has established that discrimination has occurred. When "a plaintiff cannot prove directly the reasons that motivated an employment decision a plaintiff may establish a prima facie case of discrimination through inference by presenting "facts [that are] sufficient to remove the most likely bona fide reasons for an employment action. . . .' Tyler v. Bethlehem Steel Corp. , [958 F.2d 1176, 1180 (2d Cir. 1992)]. From a showing that an employment decision was not made for legitimate reasons a fact finder may infer that the decision was made for illegitimate reasons. It is in these instances that the McDonnell Douglas-Barton model of analysis must be employed. ABA Section of Labor and Employment Law, Employment Discrimination Law, 1987-1989 Supplement (2d Ed. 1991) p. 2; see Texas Dept. of Community Affairs v. Barton, [450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)]; McDonnell Douglas Corp. v. Green, [411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)]."
Ann Howard Apricots Restaurant v. CHRO, 237 Conn. 209, 224 (1996)676 A.2d 844, Adriana v. CHRO, 220 Conn. 307, 320 n. 12 (1991).
The hearing officer correctly found that the plaintiff was disabled and therefore a member of a protected class.[4] Similarly, the hearing officer was correct in finding that the plaintiff could not perform the essential functions of specialist, inventory control. It was conceded by all parties that the job required a minimum of an eight hour a day, five day a week work schedule, a schedule the plaintiff had not worked except for one week in 1992. The plaintiffs work week was unpredictable and irregular. The respondent's need for a consistent and full time employee was a legitimate and essential job qualification. Tyndallv. National Educ. Centers. Inc. of California, 31 F.3d 209 (4thCir, 1994).
Accommodation was made by the respondent upon the plaintiffs return to work both in 1989 and in 1991. If there had not been a R.I.F. policy implemented in the fall of 1992 and an ultimate reduction of fifty percent of the work force at Textron the plaintiffs termination may have been suspect. However, Tremblay testified that he looked to eliminate or reduce positions not individuals. His testimony, accurately credited by the hearing CT Page 13309 officer, reflects that no one was performing the job of specialist, inventory control and therefore that position was among several that were reduced or eliminated. The plaintiffs termination, when viewed in light of the reduction in workforce was not discriminatory.
The claim that the plaintiff should have been offered Spreyer's job which was at a lower grade and pay level also fails. Pursuant to the R.I.F. policy the plaintiff would have needed to "possess demonstrably greater qualifications for the work to be performed, and such displacement (would) be justified by compelling and objective business reasons consistent with the strategic and operational needs of the Division." The same issue of whether the plaintiff could perform the essential function of the job; namely full time employment would not be altered simply by lowering him to a lower pay and grade level. Additionally there is little if any evidence, putting aside the work hours issue, that displacing Spreyer with the plaintiff would have been justified by compelling and objective business reasons.
The plaintiff therefore has failed to make a prima facie showing that he was qualified as defined by the case law. Assuming arguendo that the plaintiff was qualified, the respondent had a legitimate, nondiscriminatory basis upon which to terminate the plaintiff. The plaintiff has failed to meet his burden of proof that the respondent's reasoning behind the termination was pretextual. The hearing officer's decision dismissing the case is hereby affirmed.
Bernadette Conway Judge of the Superior Court