**Terry CONROW, Plaintiff,**

v.

**WEGMANS FOOD MARKETS, INC., Defendant**

**No. 01–CV–6138 CJS.**

United States District Court, W.D. New York.

Jan. 31, 2002.

Donna Marianetti, Esq., Rochester, NY, for Plaintiff.

Harter, Secrest & Emery LLP, Matthew D. Brown, Esq., Rochester, NY, for Defendant.

DECISION AND ORDER

SIRAGUSA, District Judge.

Plaintiff filed suit on March 16, 2001, alleging that defendant violated the Americans With Disabilities Act ("ADA") and New York State Human Rights Law ("HRL") by failing to make a reasonable accommodation for an injury-related disability to his shoulder and rotator cuff and for tendinitis. The case is before the Court on defendant's motion to dismiss the complaint, pursuant to FED. R. CIV. P. Rules 12(b)(1) and (6), for lack of subject matter jurisdiction and as barred by the statute of limitations. More specifically, defendant contends that plaintiff's ADA claim must be dismissed because of failure to comply with the 300 day Statute of Limitations and as a result the Court lacks jurisdiction to entertain the state HRL cause of action. After considering the papers filed in support of the motion, and

those filed in opposition to it, along with oral argument held on January 29, 2002, the Court denies defendant's motion.

## I. PROCEDURAL HISTORY

Plaintiff's complaint alleges compliance with the jurisdictional requirements of both the ADA and HRL. In that regard, plaintiff received a Right to Sue Letter from the Equal Employment Opportunity Commission ("EEOC") on or about December 20, 2000. *See* Complaint at ¶¶ 7–9, and the subject lawsuit was. commenced on March 16, 2001. On August 31, 2001 defendant filed its application to dismiss.

■■■ As a procedural matter, on a motion to dismiss under Rule 12, the Court is limited to reviewing the pleadings, documents attached thereto and incorporated into the pleadings, and matters of which the Court may take judicial notice. 2 MOORE'S FEDERAL PRACTICE, § 12.34[2] (Matthew Bender 3d ed.). However, the parties here have both submitted affidavits and letters not a part of the pleadings, obviously with the intent that the Court consider them in deciding defendant's motion to dismiss. When the parties do this in conjunction with a motion under Rule 12(b)(6), the Court must either choose to exclude the additional materials, or convert the motion into one for summary judgment and consider the extraneous papers. *See* FED. R. CIV. P. 12(c); 2 MOORE'S FEDERAL PRACTICE, § 12.34[3][a] (Matthew Bender 3d ed.). Since counsel for both sides acknowledged during oral argument, that it was indeed their intent that the Court rely on the extraneous papers in resolving defendant's application, the Court will do so, the motion, therefore, is converted to one for summary judgment.

## II. FACTUAL BACKGROUND

Plaintiff started working for Wegmans on August 1, 1984. On or about April 24, 1997, plaintiff injured himself on the job and was out of work until June 1997 on temporary disability leave. When he returned, he was medically restricted to reduced hours and to a lifting limit. At the time he worked in the Produce Department. He bid for a position that would accommodate his medical restrictions and was accepted into the Fresh Foods Department as a warehouseman. He worked in that position for two years with what he claims was excellent attendance. In the Fall of 1998, however, he was required to be placed on the forced overtime list in the Produce Department. He contends that had he worked such overtime, it would have violated his medical restrictions. However, Gary Yanni, the individual responsible for scheduling Saturday overtime, knew of plaintiff's medical restrictions and left him off the overtime list.

During this time frame, plaintiff spoke with Butch Sailes, the prior manager of the Fresh Foods Department, who informed him that he should have his doctor write a note indicating that plaintiff had a medical restriction on working overtime. Sailes also advised plaintiff to have his doctor renew the restriction every six months to avoid difficulty with the defendant. Plaintiff followed Sailes' advice and obtained from his doctor a medical restriction that "enforced" his previous restriction from June 1997. Complaint at ¶ 19. Plaintiff also planned to see his doctor every six months to have the medical restrictions renewed.

However, in June 1999 Plaintiff left for vacation before he could again see his doctor, and when he returned, he was on the list to work overtime on June 10. Plaintiff obtained a new medical restriction from his doctor dated July 8, 1999. Plaintiff then notified an employee named Hope in defendant's human resources department of the restriction. He also faxed a copy to

Gary Yanni, as well as one to defendant's medical department. Assuming that the restriction would take immediate effect, plaintiff did not report for overtime on July 10.

When plaintiff returned to work on July 12, 1999, he was told at approximately 4:00 p.m. by his supervisor, Dave Dzuba, to report to Pam Erb, in defendant's human resources department. He met with her at 4:45 p.m., along with the union steward. Erb told plaintiff she was placing him on worker's compensation immediately and that legally defendant could not have plaintiff working at the warehouse. Erb also informed plaintiff that, " '[f]orced overtime in Produce is part of your [ ] job and you [ ] didn't do that. You've managed to side step responsibility that aggravated your injury.' " Complaint at ¶ 28 (apparently quoting Ms. Erb).

Plaintiff left work and hired an attorney to attempt to obtain reinstatement of the previous accommodation that met his medical restrictions. Several pieces of correspondence later, it was not until April 13, 2000, that defendant definitively informed plaintiff's counsel that defendant could not accommodate plaintiff's work restriction. Defendant responded in a letter stating, "Wegmans is unable to accommodate Mr. Conrow's request not to be assigned mandatory overtime in the Produce area of the warehouse" and enclosed a copy of the union's letter objecting to any violation of the seniority rights of other union members. Mary M. McCabe letter to Donna Marianetti (Apr. 13, 2000) at 1 (attached as Exhibit B to Conrow aff.). Plaintiff received reduced earnings payments from defendant between July 12, 1999 and May 15, 2000. *See* McMullen aff. at ¶ 15.

### III. DISCUSSION

#### A. SUMMARY JUDGMENT STANDARD

The law on summary judgment is well settled. Summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its initial obligation, the opposing party must produce evidentiary proof in admissible form sufficient to raise a material question of fact to defeat a motion for summary judgment, or in the alternative, demonstrate an acceptable excuse for its failure to meet this requirement. *Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187 (5th Cir.1991); Fed.R.Civ.P. 56(f). Once the moving party has met its burden, mere conclusions or unsubstantiated allegations or assertions on the part of the opposing party are insufficient to defeat a motion for summary judgment. *Knight v. United States Fire Ins. Co.,* 804 F.2d 9 (2d Cir.1986).

The Court, of course, must examine the facts in the light most favorable to the party opposing summary judgment, according the non-moving party every inference which may be drawn from the facts presented. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Maguire v. Citicorp Retail Services, Inc.,* 147 F.3d 232, 235 (2d Cir.1998). However, the party

opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections,* 84 F.3d 614, 619 (2d Cir.1996).

## B. ANALYSIS

Defendant's position is that because plaintiff did not file his complaint with EEOC until November 18, 2000, he is limited to alleged discrimination that took place up to 300 days prior to the filing date, which would be January 23, 2000. He argues if any discrimination took place, it happened on July 12, 1999 (the date Ms. Erb placed him on worker's compensation), thus plaintiff's claim is barred as untimely.

Plaintiff responds that his claim is timely, because he was actively seeking an accommodation until April 13, 2001, and, as an alternative position, defendant's discriminatory act was continuous in nature. *See* Plaintiff's Memorandum of Law at 4. Defendant thoroughly addresses the allegation of whether its conduct constituted a continuing violation, but devotes little space to plaintiff's first argument, that the actual date of the last discriminatory act was April 13, 1999, the day defendant informed him, by letter, that it would not accommodate his medical restrictions. Defendant's position is that its last act of placing plaintiff on worker's compensation on July 12, 1999, was when his cause of action under the ADA accrued. Thus, the question becomes on what date did plaintiff's cause of action under the ADA accrue?

■ Generally speaking, the time period for filing a complaint of discrimination begins to run when the facts that would support a charge of discrimination would have been apparent to a similarly situated person with a reasonably prudent regard for his rights. *Bickham v. Miller,* 584 F.2d 736, 738 (5th Cir.1978). *Knowles v. Postmaster General, U.S. Postal Service,* 656 F.Supp. 593, 599 (D.Conn.1987). The Second Circuit addressed this question of accrual in an ADA case involving a summary judgment motion. *See Smith v. United Parcel Service of America, Inc.,* 65 F.3d 266 (2d Cir.1995). In *Smith,* the court held that the limitation period for the ADA "begins to run 'on the date when the employee receives a definite notice of the termination.'" *Smith,* 65 F.3d at 268 (quoting *Economu v. Borg–Warner Corp.,* 829 F.2d 311, 315 (2d Cir.1987)) (quoting *Miller v. International Telephone & Telegraph Corp.,* 755 F.2d 20, 23 (2d Cir.1985)) (other citation omitted). The court further held that, "for the notice to be effective, it must be made apparent to the employee that the notice states the 'official position' of the employer." *Id.* (citations omitted).

■ After being involuntarily placed on worker's compensation on July 12, 1999, plaintiff sought legal representation and through his counsel, attempted to obtain the same accommodation he had previously enjoyed in defendant's employment. Defendant acceded to his request to the point of asking the union to agree to an exception to the contract. *See* Complaint at ¶ 29; *see also* Conrow aff. at ¶ 15. Plaintiff's counsel's paralegal, on February 24, 2000, sent a follow-up letter to defendant. *See* Conrow aff. at Exhibit G. Defendant's response, on March 2, 2000, was that defendant was waiting for a response from the union. *See* Conrow aff. at Exhibit H. It was not until April 13, 2000, when the union refused to consent to the accommodation request, that defendant finally and unequivocally terminated plaintiff. *See* Conrow aff. at Exhibit B; McMullen aff. at ¶¶ 12–13.

Viewing the evidence in the light most favorable to plaintiff and drawing all rea-

sonable inferences in plaintiff's favor, the Court concludes that the Complaint adequately alleges a termination date of April 13, 2000, which makes his complaint to EEOC timely and, thus, this suit timely as well. Therefore, the Court need not address the parties' arguments concerning whether the violation alleged here was of a continuing nature. Since the Court has not dismissed the complaint, defendant's motion under FED. R. CIV. P. 12(b)(1), that the state cause of action be dismissed for lack of supplemental jurisdiction, is moot.

### IV. CONCLUSION

Based on the foregoing, it is hereby ordered that defendant's motion to dismiss, having been converted to a motion for summary judgment pursuant to FED. R. CIV. P. 12(c) and 56, is hereby denied.

IT IS SO ORDERED.