Gilberto RODRIGUEZ, Plaintiff,

v.

**THE PIERRE NEW YORK, FRC** Properties Partnership, and Four Seasons Hotels, Defendants.

No. 02 Civ. 2396(VM).

United States District Court, S.D. New York.

Jan. 9, 2004.

David M. Rosoff, Law Offices of Carton & Rosoff, P.C., Harrison, NY, for plaintiff.

Gilberto Rodriguez, New York, NY, pro se.

Judith A. Stoll, Kane, Kessler, P.C., New York, NY, for defendants.

## *DECISION AND ORDER*

MARRERO, District Judge.

Plaintiff Gilberto Rodriguez ("Rodriguez"), proceeding *pro se*, alleges that his employers at the Pierre Hotel (the "Pierre") in Manhattan fired him because of his age, in violation of federal and state civil rights laws. The Pierre[1] moves for summary judgment. For the following reasons, the motion is granted.

## I.  *BACKGROUND*[2]

Rodriguez worked as a server at the Café Pierre Bar from December 1982 until his termination in November 2000. Rodriguez, then age 52, alleges his dismissal was the culmination of years of unlawful age discrimination and harassment. The Pierre contends that Rodriguez, who had a spotty employment record at the hotel, was fired for stealing.

Understanding this theft allegation requires some background on the Pierre's bar service procedures and its use of consultants to monitor employee integrity. Bar servers enter customer orders into a computer system, which then generates a printed check detailing the order. The server is supposed to give customers that check for each round of orders. Whether a customer pays in cash, by credit card, or by charging the order to a hotel room, the server is supposed to take the payment and the corresponding check to a cashier, who is located one floor below the bar. The cashier enters the transaction into the computer system, thereby "closing out" the check.

The Pierre hires a consulting firm to monitor employee integrity. Without alerting any hotel employees (including management), the consulting firm's agents visit the hotel posing as guests, and then later submit a report of their activities. Two agents visited the Pierre on consecutive weekends in October 2000, and, based on their report, the Pierre fired two bar servers for stealing: Rodriguez, and a man named Derek Ma ("Ma"), then age 34. In Ma's case, the agents reported that they had paid Ma cash for their drinks, but never received a check or a receipt. The computer system never recorded the agents' order. Because the cash receipts for that evening matched the cash checks, the Pierre concluded that, instead of simply forgetting to register the order, Ma had pocketed the money.

---

**1.** Defendant FRC Properties Partnership owns the Pierre and defendant Four Seasons Hotel, Ltd., manages the Pierre. For simplicity, the Court will refer to all the defendants collectively as "the Pierre."

**2.** The facts are derived from (1) the second amended complaint; (2) the affidavit of Jac-

queline Pucci, the Director of Human Resources at the Pierre, dated July 2, 2003; and (3) Rodriguez's memorandum of law in opposition to the motion for summary judgment, dated December 1, 2003. The Court will not cite these sources further.

The theft allegation against Rodriguez is slightly more elaborate. After 7:00 p.m., the Pierre requires customers to order a minimum of $20 in drinks or food per person. When a customer's order is under that minimum, the bar server enters the transaction in the computer as "1 wine/champ" (which is charged as $20) instead of the actual drink ordered. The agents ordered from Rodriguez a round of drinks totaling less than $20 per person, and then asked him for the check. Rodriguez gave them check number 14279, which stated "2 wine/champ," and they paid with $55 in cash. The Pierre later discovered that check number 14279 (the one upon which the agents paid) was charged to a separate hotel room guest, who had paid a total of $50.30. The computer system indicated that there were no checks for "2 wine/champ" which were paid in cash that night. The Pierre concluded that Rodriguez had "recycled" the check to another customer, and pocketed the agents' cash payment. That night, the cash receipts matched the cash checks, suggesting that Rodriguez had purposefully recycled the check. The Pierre fired Rodriguez.

Rodriguez denies stealing the $55. He states that it was very busy that night, and that he may have been confused and made a mistake. In an effort to demonstrate his integrity, Rodriguez directs the Court's attention to an incident in 1990 in which he returned a large paycheck which the Pierre had erroneously issued him.

Rodriguez casts the alleged theft as pretext for age discrimination. Although he concedes that nobody at the Pierre ever made disparaging age-related comments towards him, Rodriguez contends his age-related health problems led to harassment at work, culminating in unlawful discharge. The best the Court can articulate Rodriguez's elusive argument is as follows. Rodriguez worked nine-hour shifts without a break, and these shifts became harder as he got older. Rodriguez suffered hip problems, gained weight, and was generally unable to perform at his job as well as he could at a younger age. His superiors began ridiculing him by, for example, calling him a fat pig or commenting on his visible perspiration. According to Rodriguez, his superiors preferred to have a younger person in his position.

Under a collective bargaining agreement with Rodriguez's union, the Pierre may discharge employees only for cause, and the union may challenge a discharge before an impartial arbitrator. Rodriguez, represented by a union attorney, challenged his discharge. The arbitrator concluded that Rodriguez had stolen from the Pierre and that his termination was for just cause.

Rodriguez then filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging his termination was based upon unlawful age discrimination. The EEOC concluded it was unlikely that Rodriguez could establish a valid claim of age discrimination, and issued him a right-to-sue letter, after which he brought the present lawsuit.

## II. STANDARD FOR A SUMMARY JUDGMENT MOTION

The Court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must first look to the substantive law of the action to determine which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Even if the parties dispute material facts, summary judgment will be granted unless the dispute is "genuine." *Id.* at 249, 106 S.Ct. 2505. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252, 106 S.Ct. 2505.

Throughout this inquiry, the Court must view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in favor of that party. *See Hanson v. McCaw Cellular Communications, Inc.*, 77 F.3d 663, 667 (2d Cir.1996).

### III. *DISCUSSION*

■ The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a)(1). Courts analyze ADEA claims under the familiar burden-shifting analysis for all civil rights discrimination cases set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). First, the plaintiff must make a prima facie case of discrimination, *id.*, which here means "the plaintiff must show (1) that he was in the protected age group; (2) that he was qualified for the position; (3) that he was discharged; and (4) that the discharge occurred under circumstances giving rise to an inference of discrimination." *Norton v. Sam's Club*, 145 F.3d 114, 118 (1998). "Generally speaking, a plaintiff's burden of establishing a prima

facie case in the context of employment discrimination law is 'minimal.'" *Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2002) (quoting *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001)).

If the plaintiff meets this minimal burden, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817). This intermediary burden is one "of production, not persuasion" and involves no credibility determinations. *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097. Finally, if the defendant meets this intermediary burden, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089 (citing *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

■ It is unlawful under New York state law "[f]or an employer ..., because of the age ... of any individual, ... to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296–1(a). It is unlawful under the laws of New York City "[f]or an employer ..., because of the actual or perceived age ... of any person, ... to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y. City Admin. Code § 8–

107(1)(a). Although the wording of these provisions is slightly different, and each differs slightly from the ADEA, the Court applies the same analysis to these claims as the federal ADEA claim. *See Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001).

■ The Court must grant the summary judgment motion because Rodriguez has not even met the minimal burden of making a prima facie case of discrimination. Specifically, there is nothing in the record to suggest "that the discharge occurred under circumstances giving rise to an inference of [age] discrimination." *Norton*, 145 F.3d at 118. Notably, Rodriguez does not offer any evidence suggesting that (1) the Pierre replaced him with someone younger, *see, e.g., Reeves*, 530 U.S. at 142, 120 S.Ct. 2097 (plaintiff replaced by persons in their thirties); (2) the Pierre fired other older employees, *see, e.g., Norton*, 145 F.3d at 119 (plaintiff fired near the same time as another employee over forty); or (3) anyone at the Pierre made disparaging comments about his age, *see, e.g., Parker v. Metropolitan Transp. Auth.*, 97 F.Supp.2d 437, 441 (S.D.N.Y. 2000) (defendant called plaintiff "old bastard"). Rodriguez instead argues that he was subject to discrimination because he had slowed down in his work, gained weight, and tended to perspire. Assuming these factors are even *correlated* with age, that fact, without more, does not amount to a claim of age discrimination. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) (holding that termination based on pension status, which is typically correlated with age, does not violate ADEA). It is important to note that Rodriguez is not alleging

that the Pierre unfairly stereotyped him as less productive based upon his age; he agrees that he *is* less productive because of his age. *Cf. id.* ("It is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age.").

■■ Alternatively, even if the Court agreed that Rodriguez met his prima facie case, he has offered no evidence to counter the Pierre's compelling nondiscriminatory explanation for his termination. Rodriguez's only response to the theft allegation is the conclusory, question-begging assertion that he is an honest person and would not steal. Even assuming that Rodriguez *is* an honest person who would not (and did not) steal from the Pierre, the Pierre may satisfy its intermediary burden merely by showing it reasonably relied upon the consultants' report. *See Graham v. Long Island R.R.*, 230 F.3d 34, 44 (2d. Cir. 2000) ("The key question is whether it was reasonable for the employer to rely on the [drug] test result in making its employment decision."). Rodriguez has not put forth any reason to doubt the consultants beyond the (again) question-begging assertion that he did not steal the money.[3]

Finally, the Court notes that the Pierre has offered affirmative evidence of its employment practices which further undermines Rodriguez's claim. The Pierre fired another bar server, Ma, who is almost twenty years younger than Rodriguez, based upon the same consultants' report. The evidence in the record also demonstrates that the Pierre employs many bar servers as old or older than Rodriguez.

---

**3.** To the extent that Rodriguez's complaint may be read to allege claims of age-based harassment while employed at the Pierre, that claim has been waived because it was not raised in his EEOC complaint. *See Miller v.*

*Int'l Telephone and Telegraph Corp.*, 755 F.2d 20, 24 (2d Cir.1985) ("No action based on a claim of age discrimination may be brought in federal court unless the claim was properly raised with the EEOC....").

## IV.  ORDER

For the reasons stated, it is hereby

**ORDERED** that the motion of defendants for summary judgment is granted and the case is dismissed with prejudice.

The Clerk of Court is directed to enter judgment on defendants' behalf and to close this case.

**SO ORDERED.**